UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10045-DPW |
| ) | |
| LUIS RAMIREZ, A/K/A ) | |
| "KING LITTLE PSYCHO", ) | |
| Defendant. ) | |

SENTENCING MEMORANDUM OF THE UNITED STATES

On May 12, 2004, the defendant pled guilty to the three counts of the Indictment in this case, charging him with (i) conspiracy to distribute cocaine base, also known as "crack cocaine" (more than 5 grams), and cocaine, (ii) distribution of cocaine, and (iii) distribution of more than 5 grams of crack cocaine.  The Presentence Report ("PSR") prepared by the United States Probation Office, dated July 21, 2005, correctly sets forth the sentencing guideline range as 188 to 235 months, based on an adjusted offense level of 31 and a Criminal History Category of VI.  The sentencing guideline range, as properly noted in the PSR, is based on (1) the drug weight (13.8 grams of cocaine base, a/k/a "crack cocaine", and (2) the defendant's status as a career offender, within the meaning of U.S.S.G. § 4B1.1 and 28 U.S.C. § 994(h).  The government recommends that the Court sentence the defendant to a term of incarceration of 188 months, representing the low end of the guideline range.

A.   **BACKGROUND**

The PSR accurately describes the facts underlying the convictions in this case, which, for convenience, are briefly summarized here.

This case arose from an eighteen-month investigation by the Federal Bureau of Investigation's ("the FBI's") North Shore Gang Task Force into drug trafficking and other suspected criminal behavior in the Lawrence and Lowell, Massachusetts area by members and associates of the Almighty Latin King Nation ("Latin Kings").  Over the course of the investigation, cooperating witnesses ("CW's") working for the FBI made approximately 30 purchases of heroin, cocaine and cocaine base from members and associates of the Latin Kings.  All of the purchases (and most of the conversations and negotiations leading up to the purchases) were consensually recorded.  Most of the deals also took place in a car equipped with audio and video equipment.  The CW's also wore transmitters during most of the purchases.  The transmitters enabled law enforcement agents to listen to conversations as they took place.

The investigation also disclosed substantial amounts of information regarding the organization and structure of the Latin Kings.  The Massachusetts Chapter of the Latin Kings is a street gang with hundreds of members in Lawrence, Lowell and other cities.  The Latin Kings operate local chapters throughout the

state including chapters inside many correctional facilities. Many members of the gang are involved in a broad range of illegal activities including drug trafficking and crimes of violence undertaken in furtherance of protecting the interests of the gang and its members. The defendant was identified during the course of the investigation as a member of the Latin Kings. More information regarding the Latin Kings, and the defendant's role in the organization, is set forth in the detention affidavit filed in connection with this case. See Dkt. 6.

The present indictment resulted from one aspect of this investigation: the distribution of cocaine and cocaine base by Luis Ramirez, a/k/a "King Little Psycho". On May 2, 2003, Ramirez sold a cooperating witness working with the FBI (the "CW") 4.9 grams of cocaine. On May 7, 2003, Ramirez sold the CW 13.8 grams of crack cocaine. Both buys were surveilled by law enforcement agents and recorded on audio and video tape, and are accurately summarized in the PSR.

### B.   THE DEFENDANT'S MOTION FOR A DOWNWARD DEPARTURE

The defendant has moved for a downward departure from the guideline sentencing range based on the defendant's "diminished mental capacity". Per Court Order, the defendant was examined Dr. Christine Scronce at FMC Devens for competency to stand trial. See Report of Dr. Christine Scronce, dated February 2, 2005 ("Scronce Report").

The defendant's diminished capacity argument fails because there is nothing in Dr. Scronce's report that shows that the defendant was unable to understand the wrongfulness of his behavior or to control behavior he knew was wrong at the time of the underlying offense for any reason other than his desire to get drugs.  <u>See</u> U.S.S.G. § 5K1.13.  <u>See also</u> <u>United States v. Nunez-Rodriguez</u>, 92 F.3d 14, 24-25 (1st Cir. 1996) (affirming district court's refusal to depart downward based on diminished capacity despite a previous diagnosis of schizophrenia; district court found that, *at the time of the crime*, defendant's behavior demonstrated a cognizance "inconsistent with diminished capacity").

Dr. Scronce concluded that the defendant "presented with no symptoms of mental illness that impinged upon his understanding of his case or his ability to assist in his defense."  Scronce Report at 10.  Dr. Scronce further observed that the defendant "demonstrated no symptoms of mental illness during the evaluation period" and that he "exhibited no bizarre or disruptive behavior, and he received no incident reports for infractions of institutional rules [and] was often observed socializing with peers, playing cards on the unit."  <u>Id.</u> at 6.

While the record shows that the defendant has a drug abuse problem (and therefore justifies placement in the 500 hour drug

treatment program),[1] and suggests that the defendant may suffer from mild mental retardation (see Scone Report at 8) (suggesting that mental health counseling would also be appropriate), there is nothing to suggest that the defendant did not understand what he was doing when he sold crack cocaine and cocaine to the CW in this case or that any problems he was having did not have their genesis in his longstanding drug abuse and penchant for drug trafficking.

---

[1] Section 5K1.13 makes clear that the diminished capacity cannot result from drug abuse and still form a legitimate basis for a departure. Id. See also United States v. Nunez-Rodriquez, 92 F.3d 14, 24 (1st Cir. 1996)(diminished capacity cannot result from use of drugs).

5

**CONCLUSION**

For the foregoing reasons, and those set forth in the PSR, the government recommends that the Court sentence the defendant to a term of incarceration of 188 months, representing the low end of the guideline sentencing range.

                Respectfully submitted,

                MICHAEL J. SULLIVAN
                United States Attorney,

By:  /s PETER K. LEVITT
     PETER K. LEVITT
     Assistant U.S. Attorney
     One Courthouse Way
     Boston, MA 02210
     (617)748-3355

August 2, 2005

**CERTIFICATE OF SERVICE**

    I, Peter K. Levitt, do hereby certify that a copy of the foregoing was served this day by fax and mail on Benjamin Entine, counsel for Luis Ramirez.

                                      /s PETER K. LEVITT
                                      Peter K. Levitt

August 2, 2005